IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| AMETEK, INC.<br><br>Plaintiff,<br><br>v.<br><br>NICHE POLYMER LLC, WESTCHESTER PLASTICS LLC, AND MARSHALLTON REALTY HOLDINGS LLC, and ABC CORP. 1-25 (ficticious entities whose names are presently unknown).<br><br>Defendants. | Case No._____ |

## COMPLAINT

Plaintiff, AMETEK, Inc., ("AMETEK"), by way of Complaint against Defendants, Niche Polymer LLC ("Niche Polymer"), Westchester Plastics LLC ("Westchester Plastics"), and Marshallton Realty Holdings LLC ("Marshallton") (collectively "Defendants"), alleges and states as follows:

### INTRODUCTION

1. Plaintiff brings this action to enforce Defendants' obligations to indemnify Plaintiff concerning alleged environmental contamination at property Defendants now own and operate, and to recover Plaintiff's environmental response costs.

2. AMETEK owned a former manufacturing facility located at 900 Greenbank Road in New Castle County, Delaware (the "Facility").

3. In 2021, Niche Polymer acquired the Facility as part of its acquisition of Westchester Plastics from Plaintiff. As part of that acquisition, Niche Polymer also assumed other assets and liabilities of Westchester Plastics.

4. As a result of the acquisition of Westchester Plastics, Defendants are responsible for all historic environmental liability related to the Facility and owe Plaintiff defense and indemnity for any claims related to such liability.

5. On information and belief, just months after acquiring Westchester Plastics, Niche Polymer transferred ownership of the Facility from Westchester Plastics to a newly formed entity, Marshallton.

6. Niche Polymer's efforts to shift its liabilities into one or more newly formed and underfunded limited liability companies constitute fraudulent conveyances and do not alter Defendants' responsibility to investigate, remediate, and maintain the Facility in accordance with applicable law.

7. Nor does Niche Polymer's organizational restructuring end or otherwise alter Defendants' indemnity obligations to AMETEK for alleged contamination at the Facility.

8. Defendants are responsible for the contamination that third parties, including the Delaware Department of Natural Resources and Environmental Control ("DNREC"), allege to be present at the Facility, and for indemnifying AMETEK against such claims.

9. Defendants are also responsible for liability related to third-party allegations that contamination at the Facility is impacting other properties through downstream migration, and for indemnifying AMETEK from such claims.

10. Yet, despite Plaintiff's best efforts, Defendants have ignored Plaintiff's multiple notice letters and demands under the applicable contracts and have refused to step forward to defend and indemnify Plaintiff from third-party claims and allegations related to the Facility.

11. Plaintiff has incurred and will continue to incur costs associated with defending against third-party claims concerning the Facility.

12. Plaintiff has also incurred costs of response for addressing actual or threatened environmental contamination at the Facility, including under the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA"), 42 U.S.C. § 9601 et seq.

13. Plaintiff will continue to incur costs of response in addressing hazardous substances at the Facility for which Defendants are responsible unless Defendants meet their contractual obligations to defend and indemnify AMETEK.

## THE PARTIES

14. Niche Polymer is a West Virginia limited liability company headquartered in Columbia, Maryland.

15. Westchester Plastics is a Delaware limited liability company headquartered in Nesquehoning, Pennsylvania.

16. Marshallton is a Delaware limited liability company that currently owns the Facility. On information and belief, Marshallton is headquartered in Columbia, Maryland.

17. AMETEK is a corporation headquartered in Berwyn, Pennsylvania and incorporated in Delaware.

## JURISDICTION AND VENUE

18. Venue is proper in the District of Delaware because the events giving rise to the action take place in Delaware and the Facility is located in Delaware.

19. In addition, this Court has jurisdiction pursuant to CERCLA, 42 U.S.C. § 9613(b), the Declaratory Judgment Act, 28 U.S.C. §§ 2201-2202, and 28 U.S.C. § 1331.

20. The parties have consented to jurisdiction and venue in this court pursuant to Section 9.5 of the Membership Interest Purchase Agreement and Paragraph 11.g. of the Asset Contribution and Liability Assumption Agreement (as defined below).

## FACTS

21. The Facility is a former manufacturing site located at 900 Greenbank Road in New Castle County, Delaware.

22. The Facility is located in a flood zone of a highly industrialized area.

23. The Facility is alleged to be contaminated with various hazardous substances as defined by Section 102 of CERCLA, including but not limited to metals, per- and polyfluoroalkyl substances (PFAS), volatile organic compounds, and semi-volatile organic compounds.

24. The August 30, 2021, Asset Contribution and Liability Assumption Agreement ("ACLAA") transferred the Facility and other "Contributed Assets" to Westchester Plastics from AMETEK in accordance with to the terms of that agreement.

25. Paragraph 1.c. of the ACLAA states:

> Assumed Liabilities. Upon the terms and subject to the conditions of this Contribution Agreement, as of the Effective Date, the Company [Westchester Plastics] hereby assumes and undertakes, and agrees to pay, perform and discharge in accordance with their respective terms, all Liabilities existing as a result of, arising out of, or relating to (i) the ownership of the Contributed Assets, and/or (ii) the conduct of the Business, whether before, on or after the Effective Date (collectively, the "Assumed Liabilities")

26. Paragraph 1.c. of the ACLAA further states:

> "Liabilities" shall mean, without limitation, any past, current, or future, direct or indirect liability, indebtedness, guaranty, endorsement, claim, loss, damage, deficiency, cost, expense, obligation or responsibility, fixed or unfixed, known or unknown, asserted or unasserted, choate or inchoate, liquidated or unliquidated, secured or unsecured.

27. Pursuant to Paragraph 1.a. of the ACLAA, "Contributed Assets" means the schedule of assets attached to the ACLAA, including the Facility.

28. The ACLAA defines the "Business" as those certain assets and liabilities that AMETEK transferred to Westchester Plastics.

29. Paragraph 5.a. of the ACLAA states:

> <u>Company Obligations.</u> The Company [Westchester Plastics] agrees to indemnify, defend and hold harmless Parent [AMETEK] from and against any losses, liabilities, claims, demands, judgments, expenses (including legal fees and expenses or other costs of investigating, defending, asserting and settling any claims), causes of action or suits (collectively, "Damages") which may arise in connection with any third party claim related to (i) the Business (whether prior to, on, or following Effective Date), (iii) the Contributed Assets, and/or (iii) Assumed Liabilities.

30. Pursuant to Paragraph 1. c. of the ACLAA, Westchester Plastics assumed the "Assumed Liabilities," including all liabilities arising out of ownership of the Contributed Assets and all liabilities arising out of "the conduct of the Business, whether before, on, or after the Effective Date" of the ACLAA.

31. DNREC sent a Notice of Liability letter to AMETEK on August 11, 2025, alleging contamination at the Facility.

32. On information and belief, Defendants also received at least one Notice of Liability from DNREC with similar allegations for the same Facility.

33. Other third parties, including a local water district, have also stated allegations against AMETEK concerning contamination related to the Facility.

34. Plaintiff has advised Defendants of these allegations on multiple occasions, including through multiple e-mails, letters, and verbal communications.

35. Westchester Plastics is responsible for alleged environmental contamination at and around the Facility and owes AMETEK an indemnity for any such contamination.

36. Niche Polymer acquired Westchester Plastics from AMETEK in or about July 2021.

37. Pursuant to the Membership Interest Purchase Agreement ("Purchase Agreement"), dated on or about July 2, 2021, Niche Polymer agreed to acquire, and ultimately did acquire, Westchester Plastics in its entirety, including the Contributed Assets and Assumed Liabilities, except for certain specifically identified exclusions not relevant here.

38. Niche Polymer's acquisition of Westchester Plastics closed on or about September 7, 2021.

39. At the time Niche Polymer acquired Westchester Plastics, Westchester Plastics owned the Facility, as well as other assets and liabilities, as set forth in the ACLAA.

40. These assets and liabilities were expressly included in Niche Polymer's acquisition of Westchester Plastics.

41. As such, Westchester Plastics remained responsible for the assets and liabilities transferred under the ACLAA following its acquisition by Niche Polymer.

42. On information and belief, Marshallton was formed on or about September 2, 2021.

43. On information and belief, Saunak Naik is currently the "Authorized Person" for Marshallton. Saunak Naik is the same person that signed documents related to the Niche's acquisition of Westchester Plastics.

44. Westchester Plastics transferred ownership of the Facility from Westchester Plastics to the newly formed entity, Marshallton, on or about December 20, 2021.

45.     On information and belief, Niche Polymer orchestrated and/or otherwise had a significant role in the transaction between Westchester Plastics and Marshallton and the related business strategies.

46.     On information and belief, Niche Polymer exercises extraordinary control over both Westchester Plastics and Marshallton that goes beyond the typical parent-subsidiary relationship, including by making decisions about compliance with environmental regulations, managing and directing Facility operations relating to alleged leakage and disposal of hazardous substances, and by participating directly in correspondence to and meetings with DNREC related to alleged contamination at the Facility.

47.     On information and belief, Niche Polymer isolated the Facility for transfer to a holding company.

48.     Niche Polymer's transactions constitute fraudulent conveyances pursuant to the Delaware Fraudulent Transfer Act, 6 *Del. C.* § 1301, et seq.

49.     Niche Polymer used one or more transactions to shield the assets of its subsidiaries, including the newly acquired Westchester Plastics, from third-party creditors and enforcement agencies.

50.     Niche Polymer and Westchester Plastics were each fully aware of and knew of the environmental liabilities associated with the Facility at the time of transfer to Marshallton, including through the due diligence process of Niche Polymer's acquisition of Westchester Plastics and through publicly available documents.

51.     On information and belief, Niche Polymer's newly created subsidiaries do not currently have sufficient assets to cover ongoing environmental liabilities associated with the Facility.

52. On information and belief, Marshallton has never had sufficient assets to cover its liabilities at any point following the transfer of the Facility from Westchester Plastics to Marshallton.

53. On information and belief, Niche Polymer deliberately and intentionally isolated high-value aspects of the Westchester Plastics business, including its assets and facilities related to manufacturing and extrusion operations, from any property transfers with Marshallton.

54. As a result, Marshallton was essentially insolvent upon transfer of the Facility because its liabilities exceeded its assets.

55. The end result of the fraudulent transfer of the Facility from Westchester Plastics to Marshallton by Niche Polymer was for Niche Polymer to strip away valuable business assets and isolate acquired liabilities into underfunded subsidiaries incapable of paying their debts.

56. Niche Polymer and Westchester Plastics' transfer of the Facility to an underfunded realty holdings subsidiary to avoid liability constitutes actual fraud.

57. At minimum, these transactions constitute constructive fraud.

58. These transactions are voidable transactions.

59. As such, Plaintiff can bring claims directly against each of the Defendants for any ongoing environmental liabilities and obligations.

60. Plaintiff has sent Defendants a series of formal notice and demand letters seeking defense and indemnity, beginning on August 21 after Plaintiff received a Notice of Liability from DNREC for which Defendants are responsible, and again on September 9, 2025, October 15, 2025, and November 4, 2025.

61. Plaintiff also demanded defense and indemnity from Defendants for other third-party claims, in accordance with the terms of the ACLAA and the Purchase Agreement.

62. To date, Defendants have not substantively responded to Plaintiff's multiple demands for indemnity under the ACLAA and the Purchase Agreement.

63. Nor have Defendants agreed to assume Plaintiff's defense of any claims and/or enforcement actions.

64. Nor have Defendants properly undertaken, paid for, or discharged other on-site liabilities as required by the ACLAA.

65. Defendants' recalcitrance has caused Plaintiff to incur damages, including costs of response that are recoverable under CERCLA.

66. For example, Plaintiff has conducted environmental assessments and investigations of the Facility, neighboring facilities, and related contamination.

67. Plaintiff conducted certain response actions at the Facility and incurred response costs with respect to the Facility, including without limitation pursuant to the Resource Conservation and Recovery Act, 42 U.S.C. §6901 et seq., CERCLA, and the Hazardous Substances Cleanup Act, 7 Del. C. Ch. 91, and has been performing such work under the direction of DNREC.

68. Plaintiff has hired environmental consultants to assist in conducting response actions at the Facility.

69. Plaintiff's investigation of the Facility has included reviewing historic site investigations on file with DNREC.

70. Plaintiff has investigated contamination that is alleged to originate from the Facility, including but not limited to conducting a search for Potentially Responsible Parties ("PRPs") under CERCLA.

71. These costs are recoverable costs of response under the National Oil and Hazardous Substances Pollution Contingency Plan ("NCP"), 40 CFR Part 300.

72. Plaintiff will continue to incur recoverable response costs under CERCLA.

73. Plaintiff has also incurred costs in evaluating claims and defending itself from potential litigation and allegations made by DNREC and private parties related to the Facility.

74. Plaintiff will continue to incur costs of defending itself against third-party claims and allegations.

75. Defendants are responsible for such costs under the indemnity obligations of the ACLAA and the Purchase Agreement.

## COUNT ONE

### Claim for Cost Recovery Pursuant to CERCLA Section 107(a)

76. Plaintiff repeats the allegations contained in the preceding paragraphs 1 through 75 as though set forth in full herein.

77. CERCLA creates a private right of action for any "person" to recover "necessary costs of response" incurred consistent with the National Contingency Plan, plus interest. 42 U.S.C. § 9607(a)(1-4).

78. These costs may be recovered from any entity that falls within the four categories of parties deemed liable by Congress when (1) a release or threatened release, (2) from a facility, (3) of a hazardous substance, (4) causes the incurrence of response costs. 42 U.S.C. § 9607(a)(1)-(4)(B).

79. CERCLA Section 101(22) defines "release" as "any spilling, leaking, pumping, pouring, emitting, emptying, discharging, injecting, escaping, leaching, dumping, or disposing into the environment (including the abandonment or discarding of barrels, containers, and other

closed receptacles containing any hazardous substance or pollutant or contaminant) . . . ." 42 U.S.C. § 9601(22).

80.     CERCLA Section 101(9) defines a "facility" in part as "any site or area where a hazardous substance has been deposited, stored, disposed of, or placed, or otherwise come to be located. . ." 42 U.S.C. § 9601(9).

81.     The Facility is a facility as defined in CERCLA.

82.     Hazardous substances within the meaning of CERCLA, including metals, volatile organic chemicals, semi-volatile organic chemicals, PFAS, and other substances, are alleged by DNREC and other third parties to have been released at the Facility.

83.     Releases and/or threatened releases of hazardous substances at and/or from the Facility have caused, and will continue to cause, Plaintiff to incur necessary costs of response that are consistent with the NCP.

84.     Plaintiff has investigated and remediated certain hazardous substances at the Facility, including but not limited to those certain hazardous substances alleged in Paragraph 82, and conducted PRP searches related to the Facility.

85.     The four categories of parties that Congress deemed liable for cleanup costs under CERCLA include (1) owners and operators of facilities from which there was a release; (2) persons who owned or operated such facilities at the time hazardous substances were disposed of; (3) persons "who by contract, agreement, or otherwise arranged" for disposal, treatment or transport of hazardous substances; and (4) transporters who selected disposal or treatment sites. CERCLA § 107(a)(1)-(4)(B), 42 U.S.C. § 9607(a)(1)-(4)(B).

86.     Defendants are covered persons under CERCLA, including as current owners and operators of the Facility.

87. Defendants are therefore jointly and severally liable for all costs of response associated with the Facility that are consistent with the NCP.

88. Plaintiff is entitled to an award of its response costs incurred, plus interest, under CERCLA Section 107(a), 42 U.S.C. § 9607(a).

89. Plaintiff is also entitled to a declaratory judgment that the Defendants shall be jointly and severally liable for necessary future costs of response related to the Facility that are consistent with the NCP pursuant to CERCLA Section 113(g)(2), 42 U.S.C. § 9613(g)(2).

## COUNT TWO

### Claim for Breach of Contract (Indemnity and Defense)

90. Plaintiff repeats the allegations contained in the preceding paragraphs 1 through 89 as though set forth in full herein.

91. The ACLAA is a valid and enforceable contract.

92. The ACLAA requires Westchester Plastics to defend and indemnify Plaintiff from claims related to the Facility, including as alleged in the Notice of Liability by DNREC and by other third parties.

93. Defendants have breached their defense and indemnity obligations under the ACLAA, including by failing to indemnify Plaintiff against claims and allegations by third parties related to contamination of the Facility following receipt of Plaintiff's notice letters and demands for indemnity.

94. Plaintiff has sent multiple demands and notice letters to Defendants, and Defendants have failed to substantively respond to any such demands.

95. Plaintiff has suffered and will continue to suffer costs and other damages resulting from defending against the claims and allegations of third parties in relation to the Facility.

## COUNT THREE

### Claim for Fraudulent Transfer under 6 Delaware Code § 1301, et seq.

96. Plaintiff repeats the allegations contained in the preceding paragraphs 1 through 95 as though set forth in full herein.

97. The Delaware Uniform Fraudulent Transfer Act sets out claims for actual fraud (§ 1304(a)(1)) and constructive fraud (§ 1304(a)(2)).

98. "A transfer made or obligation incurred by a debtor is fraudulent as to a creditor . . . if the debtor made the transfer or incurred the obligation (1) with actual intent to hinder, delay or defraud any creditor of the debtor; or (2) without receiving a reasonably equivalent value in exchange for the transfer or obligation, and the debtor: a. Was engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction; or b. Intended to incur, or believed or reasonably should have believed that the debtor would incur, debts beyond the debtor's ability to pay as they became due." 6 Del. C. § 1304.

99. Delaware law also voids fraudulent transfers as to current creditors whose claims arise prior to the transaction if the transaction is not for reasonably equivalent value and renders a debtor's liabilities greater than its assets. 6 Del. C. § 1305(a)-(b).

100. Niche Polymer acquired Westchester Plastics pursuant to the Purchase Agreement.

101. Westchester Plastics had an existing and ongoing obligation to assume, undertake, pay for, perform, and discharge the Assumed Liabilities in the ACLAA at the time of the transfer of the Facility to Westchester Plastics, and an obligation to indemnify AMETEK for Liabilities related to the Facility.

102. Defendants knew or should have known of existing and potential environmental liabilities at the Facility at the time of Niche Polymer's acquisitions.

103. Defendants knew of the indemnity obligations owed to AMETEK under the ACLAA for both existing and/or ongoing environmental liabilities, and for potential future third-party claims.

104. Within months of Niche Polymer acquiring Westchester Plastics, Westchester Plastics transferred ownership of the Facility to Marshallton.

105. On information and belief, Defendants intentionally and fraudulently severed certain of Westchester Plastics liabilities from Westchester Plastics' more valuable assets utilizing one or more Niche Polymer subsidiaries, including by transferring the Facility from Westchester Plastics to Marshallton.

106. On information and belief, Niche Polymer was involved in and orchestrated the decision to sever the Facility from Westchester Plastics' other more valuable business assets.

107. On information and belief, Marshallton was undercapitalized and/or effectively insolvent at the time of the transaction or immediately thereafter.

108. On information and belief, Niche Polymer's scheme of fraudulent transactions, including the transfer of the Facility to Marshallton, was intended to hinder AMETEK's ability to enforce Westchester Plastics' Assumed Liabilities and indemnity obligations, including as to the discharge of and indemnity for known and unknown on-site contamination at the Facility.

109. As such, the transfer constitutes actual fraud.

110. On information and belief, the transfer of the Facility to Marshallton was not made in return for reasonably equivalent value.

111. On information and belief, the transfer of the Facility to Marshallton left Marshallton with insufficient assets to continue in business.

112. The transfer of the Facility to Marshallton caused Marshallton to incur debts beyond their ability to pay them and constitutes constructive fraud.

113. Defendants' transfer of the Facility and/or other assets and liabilities of Westchester Plastics are voidable transactions.

## COUNT FOUR

### Declaratory Judgment

114. Plaintiff repeats the allegations contained in the preceding paragraphs 1 through 113 as though set forth in full herein.

115. Defendants are liable under CERCLA Section 107(a), 42 U.S.C. § 9607(a), because each Defendant is a person as defined by CERCLA Section 101(21), 42 U.S.C. § 9601(21), and is liable under CERCLA Section 107(a), 42 U.S.C. § 9607(a).

116. Releases or threatened releases of hazardous substances and other contamination at the Facility have caused and will continue to cause Plaintiff to incur necessary response costs consistent with the NCP.

117. An actual controversy exists, within the meaning of 28 U.S.C. § 2201 and CERCLA Section 113(g)(2), 42 U.S.C. § 9613(g)(2), between the Plaintiff on one hand and Defendants on the other, regarding their respective rights and responsibilities for necessary response costs incurred and to be incurred by Plaintiff.

118. Pursuant to CERCLA section 113(g)(2), 42 U.S.C. § 9613(g)(2), and 28 U.S.C. §§ 2201-2202, Plaintiff is entitled to a declaratory judgment on liability for response costs under CERCLA Section 107(a), 42 U.S.C. § 9607(a) and/or CERCLA Section 113(f)(3)(B), 42 U.S.C.

§ 9613(f)(3)(B) that will be binding in any subsequent action or actions to recover further response costs, including for work performed in identifying other PRPs for other response costs.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff demands judgment against Defendants as follows:

    a.    Declare Defendants jointly and severally liable under CERCLA Section 107(a);

    b.    Order Defendants to pay an amount to be determined at trial for all response costs incurred by Plaintiff consistent with the NCP;

    c.    Award prejudgment interest, costs, and attorneys' fees as allowed by law;

    d.    Award damages for breach of contract, including costs of defense of ongoing litigation, enforcement, and other claims;

    e.    Award punitive damages for intentional breach of contract;

    f.    Declare that Defendants are liable for their appropriate shares of all future response costs incurred by Plaintiff and consistent with the NCP;

    g.    Declare that Defendants are liable for all future costs arising out of Defendants' breach of the ACLAA;

    h.    Any other further relief as the Court deems appropriate, just, and equitable.

Dated: December 19, 2025                  MORGAN, LEWIS & BOCKIUS LLP

                                            */s/ Jody C. Barillare*
                                            Jody C. Barillare (#5107)
                                            Cassidy Duckett Britt (#7023)
                                            1201 N. Market Street, Suite 2201
                                            Wilmington, DE 19801
                                            Tel.:   +1.302.574.3000
                                            jody.barillare@morganlewis.com
                                            cassidy.britt@morganlewis.com
                                            *Counsel for Plaintiff AMETEK, Inc.*

        John McGahren (*pro hac vice* forthcoming)
        Mark Donatiello (*pro hac vice* forthcoming)
        502 Carnegie Center
        Princeton, NJ 08540
        Tel.:   +1.609.919.6600
        john.mcgahren@morganlewis.com
        mark.donatiello@morganlewis.com
        *Counsel for Plaintiff AMETEK, Inc.*